# UNITED STATES DISTRICT COURT FOR THE
# DISTRICT OF NEW HAMPSHIRE

John A. Brooks

    v.                                          Civil No. 07-cv-411-JD

Kelly A. Ayotte, et al.[1]

## O R D E R

    John Brooks has filed this civil rights action (document no. 1) pursuant to 42 U.S.C. § 1983, alleging that the defendants have violated his constitutional rights by subjecting him to punitive conditions of confinement while he is a pretrial detainee, denying him adequate medical care, and denying him adequate access to his attorneys. The matter is presently before the Court for a preliminary review to determine whether or not the complaint states any claim upon which relief might be granted, or whether the complaint, or any claim therein, should

---

[1] The named defendants, in addition to Kelly A. Ayotte, are: New Hampshire Department of Corrections Commissioner William L. Wrenn and New Hampshire State Prison Warden Richard M. Gerry. In the initial complaint, additional defendants were named by plaintiff, but have been voluntarily dismissed from this action (document no. 7).

be dismissed.[2]  See 29 U.S.C. § 1915A (requiring the court to preliminarily screen any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.").

## Standard of Review

The federal screening statute governing complaints filed by prisoners requires that the court review a prisoner complaint prior to full consideration of it's merits.  See 28 U.S.C. § 1915A(a) (requiring the court to review complaint prior to docketing, or as soon after docketing as is feasible).  In conducting the screening, the Court shall identify cognizable claims, or dismiss the complaint, or any portion of the complaint, that is frivolous, malicious, or fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  See 28 U.S.C. § 1915A(b).  Because this review is to be undertaken prior to the complaint being answered, I will credit the assertions in the complaint as true for purposes of preliminary screening. Applying this standard, I recite the facts alleged as follows.

---

[2]Also pending before this Court is Brooks' motion for a preliminary injunction.  That matter will be addressed in a separately issued Report and Recommendation.

Background

John Brooks is a pretrial detainee presently housed in the Special Housing Unit ("SHU") at the New Hampshire State Prison ("NHSP"). Brooks has been charged with capital murder, first degree murder, and conspiracy to commit capital murder in Rockingham County Superior Court, and is being held without bail on those charges. Brooks' criminal trial is presently scheduled to commence on August 11, 2008. Rockingham County officials housed Brooks at the Strafford County House of Corrections ("SCHC") between December 13, 2006 and December 13, 2007. At the SCHC, Brooks was housed in general population, which gave him freedom of movement for most of the day, allowed him to exercise for 1 ½ to 2 hours per day, and allowed him to access the jail commissary. In addition, Brooks was permitted to have unlimited access to his attorneys, both by in-person visit and by telephone, every day between 8:00 a.m. and 8:00 p.m.

Brooks is fifty-five years old. He has been diagnosed with Type II diabetes, which he controls by diet, exercise and medication. While at the SCHC, Brooks' blood sugar level was checked twice a day. Brooks alleges that while his blood sugar levels were high while he was at the SCHC, he was able to control

them to a reasonable degree due to his access to sufficient exercise, commissary snacks, and blood sugar testing.

On November 26, 2007, the office of the Attorney General advised Brooks' attorneys that it intended to have Brooks transferred to a special "pre-death row" unit of the NHSP. Placement in that unit would result in Brooks being confined to his cell for twenty-three hours per day under constant video surveillance. The Attorney General's office refused to provide defense counsel with specific evidence justifying the transfer to the NHSP and refused to negotiate a less restrictive pretrial environment for Brooks. Instead, the Attorney General's office agreed to seek judicial approval for the transfer prior to actually transferring Brooks.

On December 13, 2007, however, without first seeking judicial approval, the Attorney General's office had Brooks transferred to the NHSP. Since December 13, 2007, Brooks has been held at SHU where he is confined to his cell twenty-three hours per day. At the SHU, Brooks has no freedom of movement, has extremely limited access to the means to exercise, cannot provide snacks for himself, and can only make telephone calls to his attorneys or anyone else during the one hour per day he is

allowed to be out of his cell.  In addition, Brooks' attorney visits are significantly restricted and require advance appointments.

## Discussion

I.  Section 1983

Section 1983 creates a cause of action against those who, acting under color of state law, violate federal constitutional or statutory law.  See 42 U.S.C. § 1983[3]; City of Okla. City v. Tuttle, 471 U.S. 808, 829 (1985); Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002).  In order for a defendant to be held liable under § 1983, his or her conduct must have caused the alleged constitutional or statutory deprivation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 692 (1978); Soto v. Flores, 103 F.3d 1056, 1061-62 (1st Cir. 1997).  Here, Brooks claims that defendants are state actors, and that they violated his federal

---

[3] 42 U.S.C. § 1983 provides that:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

5

constitutional rights.  Brooks' claims arise, therefore, under § 1983.

II.  Fourteenth Amendment Claims

Detainees have a constitutional right under the due process clause of the Fourteenth Amendment to be free of punishment.  See Surprenant v. Rivas, 424 F.3d 5, 15 (1st Cir. 2005) (citing O'Connor v. Huard, 117 F.3d 12, 15 (1st Cir. 1997)).  "'[T]he State does not acquire the power to punish . . . until after it has secured a formal adjudication of guilt in accordance with due process of law.'"  Martinez-Rivera v. Ramos, 498 F.3d 3, 9 (1st Cir. 2007) (quoting City of Revere v. Mass. Gen. Hosp., 463 U.S. 239, 244 (1983) and Ingraham v. Wright, 430 U.S. 652, 671-72 n.40 (1977)).  However, challenged conditions or restrictions which can be rationally related to some legitimate administrative goal or security concern generally will not be deemed unconstitutional "punishment."  O'Connor, 117 F.3d at 15.  The issue in evaluating claims by a pretrial detainee, therefore, is whether the conditions of confinement were reasonably related to a legitimate state interest or were intended instead as punishment.  See Surprenant, 424 F.3d at 13; Collazo-Leon v. U.S. Bureau of Prisons, 51 F.3d 315, 317 (1st Cir. 1995).

Brooks alleges that, in violation of his Fourteenth Amendment rights, he was: (1) confined to a small cell for twenty-three hours a day under video surveillance, (2) denied freedom of movement, including access to adequate exercise facilities, (3) denied adequate medical care, (4) denied sufficient access to the NHSP commissary snacks to control his blood sugar, and (5) denied adequate access to his attorneys.  I will address each of these claims in turn.[4]

   A.   Conditions of Confinement

In examining Brooks' allegations that he was subjected to punitive conditions of confinement, I consider whether the questioned conditions were reasonably related to a legitimate state interest or whether the complaint adequately alleges that they were intended instead as punishment.  See Collazo-Leon, 51 F.3d at 317.  Brooks alleges that he was moved from the SCHC to the NHSP, where he was subjected to significantly more restrictive conditions of confinement than he had been living with at the SCHC.  Brooks alleges that the transfer was made without justification or cause.  Brooks claims the Attorney

---

[4] The claims, as identified herein, shall be considered to be the claim raised in the complaint for all purposes.  If Brooks disagrees with the identification of the claims in this Order, he must file a motion to amend his complaint.

General's office offered no specific reason for the transfer, and did not seek or obtain court approval prior to effecting the transfer.  Brooks' complaint alleges that his freedom of movement, as well as his ability to exercise, purchase snacks, and see and speak with his attorneys, among other things, were suddenly denied to him without any grounds or due process being provided to him whatsoever.  Brooks claims that there were no facts or circumstances, and no acts on his part, that rendered him deserving of punishment during his pretrial confinement.  Accordingly, I find that Brooks has stated the minimum facts necessary to assert that he was, in fact, subjected to punitive prison conditions, and that he can therefore state a cause of action for a violation of his Fourteenth Amendment right not to be subject to punishment during his pretrial detention.

  B. <u>Access to Adequate Medical Care</u>

  The Eighth Amendment protects prison inmates from prison officials acting with deliberate indifference to their serious medical needs.[5]  See Farmer v. Brennan, 511 U.S. 825, 831 (1994).

---

[5]The Fourteenth Amendment is at least as protective of a pretrial detainee's right to medical and mental health care as claims that arise under the Eighth Amendment.  As plaintiff states an Eighth Amendment claim, I find that he also states a claim under the Fourteenth Amendment.

To assert a viable cause of action for inadequate medical care, an inmate must first state facts sufficient to allege that he has a serious medical need for which adequate care has not been provided.  Farmer, 511 U.S. at 831; Rhodes v. Chapman, 452 U.S. 337, 347 (1981); Estelle, 429 U.S. at 106.  The inmate must then allege that a responsible prison official was aware of the need or of the facts from which the need could be inferred, and still failed to provide treatment.  Estelle, 429 U.S. at 106.  A serious medical need is one that involves a substantial risk of serious harm if it is not adequately treated.  Barrett v. Coplan, 292 F. Supp. 2d 281, 285 (D.N.H. 2003); Kosilek v. Maloney, 221 F. Supp. 2d 156, 180 (D. Mass. 2002) (citing Farmer, 511 U.S. at 835-47); see also Gaudreault, 923 F.2d at 208 (defining a serious medical need as one "that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.") (internal citations omitted).

"[A]dequate medical care" is treatment by qualified medical personnel who provide services that are of a quality acceptable when measured by prudent professional standards in the community, tailored to an inmate's particular medical needs, and that are

based on medical considerations.  United States v. DeCologero, 821 F.2d 39, 42-43 (1st Cir. 1987).  This does not mean that an inmate is entitled to the care of his or her choice, simply that the care must meet minimal standards of adequacy.  Deliberate indifference may be found where the medical care provided is "so clearly inadequate as to amount to a refusal to provide essential care."  Torraco, 923 F.2d at 234.  Constraints inherent in a prison setting may affect the choice of care provided, and may be relevant to whether or not prison officials provided inadequate care with a deliberately indifferent mental state.  Wilson v. Seiter, 501 U.S. 294, 302 (1991).

   Brooks has alleged that he was diagnosed with Type II diabetes more than ten years prior to his incarceration.  Brooks further alleges that while he was incarcerated at the SCHC, he was receiving adequate treatment, in the form of twice daily blood testing as well as medication, daily exercise, and access to a medically appropriate diet.  Thus, at the SCHC, his diabetes was reasonably controlled.  Brooks alleges that with the restriction on his ability to exercise and snack, his health has been adversely affected and he has been exposed to a serious risk

of harm inherent in not having his blood sugar levels well controlled.

Brooks alleges that prison officials were aware of his condition, or should have been, as he was receiving treatment at the SCHC immediately prior to his transfer to the NHSP. Despite this, brooks alleges he did not receive adequate medical care. Accordingly, I find that Brooks has stated sufficient facts to allege a deprivation of adequate medical care at the prison and I will direct this claim to proceed against the defendants.

C.   Access to Attorneys

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. "[U]nreasonable interference with the accused person's ability to consult counsel is itself an impairment of the right [to the assistance of counsel]." Benjamin v. Fraser, 264 F.3d 175, 185 (2d Cir. 2001). An accused person deprived of counsel during the pretrial phase of criminal proceedings is one of the most serious deprivations that can be suffered by a pretrial detainee. See Wolfish v. Levi, 573 F.2d 118, 133 (2d Cir. 1978), rev'd on other grounds by Bell v. Wolfish, 441 U.S. 520 (1979). Here, Brooks alleges that his

ability to consult with counsel has been drastically curtailed without justification. Brooks claims that this curtailment violates the Sixth Amendment. Brooks is charged with capital murder. There is no doubt that pretrial access to his attorneys is of the utmost importance in his circumstances. Accordingly, I find that, for purposes of preliminary review, Brooks has stated sufficient facts to state a claim upon which relief might be granted for a denial of his right to counsel.

III. Supervisory Liability

"Supervisory liability under § 1983 cannot be predicated on a respondeat theory, but only on the basis of the supervisor's own acts or omissions." Aponte Matos v. Toledo Davila, 135 F.3d 182, 192 (1st Cir. 1998) (internal citations omitted). A supervisor must be "either was a primary actor involved in, or a prime mover behind, the underlying violation." Camilo-Robles v. Zapata, 175 F.3d 41, 43-44 (1st Cir. 1999). There must be "an affirmative link, whether through direct participation or through conduct that amounts to condonation or tacit authorization" to the violation alleged. Id. at 44.

Brooks claims that his transfer to the SHU was directed by the office of the Attorney General, who presumably acted in

concert with the Commissioner of Corrections and the NHSP Warden, to insure that Brooks was placed, as the Attorney General's office wished, in the SHU.  The Warden and Commissioner are also responsible for the general conditions of confinement at the prison, and for insuring that there are policies in place to protect the distinct rights of pretrial detainees housed at that facility.  While Brooks has not identified specific actions taken by the named defendants that violate his rights, he has sufficiently alleged that these individuals, in their supervisory capacities, are responsible for his transfer to the NHSP's SHU, and to the conditions existing therein.  Accordingly, I direct that this complaint be served on Ayotte, Wrenn, and Gerry in their supervisory capacities.

## Conclusion

For the foregoing reasons, and without further comment on the merits of the claims alleged, I find that Brooks has sufficiently stated the minimum facts necessary to allow this action to proceed against defendants Ayotte, Wrenn and Gerry.  I order the complaint (document no. 1 & 7) be served on Defendants. The Clerk's office is directed to serve the New Hampshire Office of the Attorney General ("AG"), as provided in the Agreement On

Acceptance Of Service, copies of this order and the complaint (document no. 1 & 7).  <u>See</u> LR 4.3(d)(2)(C).  Within thirty days from receipt of these materials, the AG will submit to the court an Acceptance of Service notice specifying those defendants who have authorized the AG's office to receive service on their behalf.  When the Acceptance of Service is filed, service will be deemed made on the last day of the thirty-day period.

As to those defendants who do not authorize the AG's office to receive service on their behalf or whom the AG declines to represent, the AG shall, within thirty days from receipt of the aforementioned materials, provide a separate list of the last known addresses of such defendants.  The Clerk's office is instructed to complete service on these individuals by sending to them, by certified mail, return receipt requested, copies of these same documents.

Defendants are instructed to answer or otherwise plead within twenty days of acceptance of service.  <u>See</u> Fed. R. Civ. P. 12(a)(1)(A).[6]

---

[6]The defendants prematurely filed an answer to this complaint on January 10, 2008 (document no. 27).  If no further answer or other responsive pleading is received within the time frame established in this Order, the answer filed will be accepted as the defendants' answer in this matter.

Plaintiff is instructed that all future pleadings, written motions, notices, or similar papers shall be served directly on the Defendants by delivering or mailing the materials to them or their attorneys, pursuant to Fed. R. Civ. P. 5(b).

**SO ORDERED.**

                                        /s/ James R. Muirhead
                                        James R. Muirhead
                                        United States Magistrate Judge

Date:       January 16, 2008

cc:         Christopher H. M. Carter, Esq.
            Dean Richlin, Esq.
            Daniel M. Deschenes, Esq.
            Thomas M. Hoopes, Esq.
            Martin F. Murphy, Esq.
            Laura E. B. Lombardi, Esq.
            Nancy J. Smith, Esq.